## SOUTHERN HARDWARE CO., Limited, v. BARHAM.

### No. 5610.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1938.

Hawthorne & Files, of Bastrop, for appellant.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellee.

DREW, Judge.

Plaintiff instituted this suit on an open account against defendant for recovery of the sum of $274.15, with legal interest thereon from judicial demand until paid. It alleged it sold and delivered goods, wares, and merchandise to defendant between the dates of September 26, 1934, and February 9, 1935, to the amount of $286.41, on which account there is a credit due of $12.26, leaving the balance sued for. It further alleged that defendant had acknowledged in writing the account sued on and its correctness. In answer to a prayer for oyer, it produced a letter which is claimed by plaintiff to be an acknowledgment of the debt.

Defendant in answer denied all the allegations of plaintiff's petition; denied that she owes it any amount; she denied that the letter was an acknowledgment of the account by her as her debt or that in said letter she promised to pay it. Defendant admits writing the letter as a protest against plaintiff's charging her with merchandise purchased by W. T. Barham. Defendant further answered as follows:

"VI. And now further answering plaintiff's petition, respondent shows that she formerly operated a store in the village of Oak Ridge and made purchases of merchandise from plaintiff herein; that she went out of business prior to the year 1933 and sold her business to her son, W. T. Barham, who continued to operate a mercantile establishment in the same building formerly occupied by respondent; that she notified plaintiff, its agents and representatives, that she was no longer interested in said store and that no further charges should be made to her account for merchandise sold to or bought by W. T. Barham, and that she would not be responsible therefor, said notice having been duly given to plaintiff long prior to September 27, 1934.

"VII. That notwithstanding the notice given to plaintiff that she was no longer operating the store, plaintiff made the sales of merchandise payment of which is claimed in this suit to W. T. Barham and charged said purchases to respondent, all without her knowledge or consent, and plaintiff continued to sell merchandise to W. T. Barham and charge same to her account after receipt of the letter of February 27, 1936, referred to in plaintiff's petition, and made one charge, amounting to $41.40 to respondent's account on April 25, 1935, all these charges having been made to respondent's account after formal notice from her that she would not be responsible therefor, all of said charges having been made to respondent's account without her knowledge, but with full knowledge on the part of plaintiff that she was not interested in the store and was not responsible for its debts, or the purchases made by W. T. Barham, and consequently respondent avers that she does not owe plaintiff anything."

The lower court rendered judgment for plaintiff as prayed for and defendant is now prosecuting this appeal.

The record discloses that defendant operated a mercantile business in her name from 1926 until November 1, 1932, at which time she went out of business and turned it over entirely to her son, W. T. Barham. This suit is for merchandise sold and delivered by plaintiff, beginning September 27, 1934, and ending February 8, 1935. The principal contention urged by plaintiff to recover judgment against the defendant is it had had no notice from her that the business was not hers. This, coupled with the alleged acknowledgment by her of the debt, constitutes the grounds upon which plaintiff expects to recover.

On the trial of the case, defendant offered evidence to show that it was common knowledge among the wholesale houses selling merchandise in that territory that the business was owned and operated by W. T. Barham and not by her. This testimony was objected to and the objection sustained. We are of the opinion the evidence should have been admitted. It would have great

weight in determining whether or not plaintiff had such knowledge, under the conflicting testimony on this point. The fact that defendant was in business for herself at one time would not necessarily justify the belief by plaintiff that she would continue in business forever. There was some duty placed upon the plaintiff, as well as upon defendant, in this respect.

Upon the trial of the case, which took place on May 18, 1937, the defendant testified that soon after she discontinued business, upon the advice of her lawyer, she visited in person most, if not all, of the wholesale houses with which she had been doing business and notified them in person that she was no longer connected with the business; and that she went into plaintiff's place of business and asked for the president, Mr. Joe Marx. He was busy at the time and she had to wait quite a while, and during this time she made some purchases for her personal use. He finally came to her and she notified him that she was no longer in business; that she had turned it over to W. T. Barham. In rebuttal, Mr. Joe Marx was placed upon the stand and denied defendant's testimony. The case was closed, and on June 22 following, judgment was rendered for plaintiff as prayed for; and two days later defendant applied for a new trial, setting out the following:

"I. The judgment as rendered is contrary to the law and evidence.

"II. Since the trial of this case, defendant has discovered evidence important to the cause, which she could not, with due diligence, have obtained before; your defendant testified at the trial of this case that during the early part of the year 1933, she went to the place of business of plaintiff and informed Mr. Joe Marx, President of Southern Hardware Company, Ltd., that she was no longer in business and instructed him not to make any further charge to her account for merchandise sold; at the time the aforesaid evidence was given, defendant thought and had reasonable ground to think that the person to whom she gave said notice was Mr. Joe Marx; Mr. Joe Marx was not present in court at the time and did not appear in court until after defendant had rested her case, when he was then called as a witness by plaintiff in rebuttal and it was not until the said Mr. Joe Marx was sworn as a witness that defendant discovered that he was not the party to whom she had talked in the early part of 1933; defendant did not have an opportunity to offer any further testimony at the trial of the case. After the trial, defendant went to the place of business of plaintiff in Monroe and there learned that the man to whom she had given the aforesaid notice was a Mr. Haas (or Hayes), an employee of plaintiff corporation, who was duly authorized to receive such notice; that when she originally went to the place of business of plaintiff in 1933, she requested that she be allowed to see Mr. Joe Marx, president of plaintiff corporation and was told that Mr. Joe Marx was upstairs, she waited for him and in a few minutes the aforesaid Mr. Haas came from the part of the house where defendant thought Mr. Joe Marx was and represented himself to her as being Mr. Joe Marx, and she gave the said Mr. Haas the notice which she testified was given to Mr. Joe Marx. Defendant did not know Mr. Joe Marx and does not recall ever having seen him until the date of the trial of this case."

This motion was overruled.

In the interest of justice, we are of the opinion it should have been granted. The lower court in its opinion found as a fact that defendant did go to plaintiff's place of business and tell someone in there that she was no longer in business, and that she thought she was notifying the president, Mr. Joe Marx, but that she was mistaken in the person. If defendant can show, as alleged in the motion, that she gave notice to one authorized to receive such notices, the purpose of her visit was accomplished. The testimony is material to a just decision of the case and, although the trial judge has a wide discretion in granting or refusing new trials, appellate courts likewise have a wide discretion in remanding cases for the introduction of evidence which will assist in arriving at a just verdict.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be set aside and the case remanded to the lower court to be heard in accordance with the views herein expressed. Cost of appeal to be paid by appellee, and all other costs to await the final determination of the case.